Marie Fletcher appeals from a summary judgment for Douglas V. Hale and Danny Haswell, the sole remaining defendants[1] in Ms. Fletcher's suit to recover damages for the drowning death of her 10-year-old daughter, Demetrius. Demetrius drowned in a swimming pool at an apartment complex owned by Hale. Haswell was the maintenance supervisor at the apartment complex.
The trial court, after considering all affidavits, depositions, answers to interrogatories, and admissions of fact filed by the parties, entered the following final judgment:
 "The determination as to the existence vel non of a duty resting upon a defendant is an issue of law for the court and not one for the jury. Sungas, Inc. v. Berry, [Perry], 450 So.2d 1085
(Ala. 1984). The deceased minor [Demetrius] was a trespasser. The Court is of the opinion that defendants have breached no duty owed to the trespassing minor who drowned in a swimming pool located within an apartment complex. It is therefore ordered by the Court that the motions for summary judgment be, and the same are hereby, granted. . . ."
Hale was the owner of University Parke Apartments and the possessor of the common areas, including the pools of that apartment complex, when 10-year-old Demetrius trespassed by entering the pool area during the early afternoon of a midsummer day. Hale had employed Haswell, who was a trained pool operator with a certificate of competency from the health department, and among Haswell's duties was "the close supervision" of the swimming pool. *Page 136 
In Motes v. Matthews, 497 So.2d 1121, 1122-23 (Ala. 1986), we held:
 "The attractive nuisance doctrine is not applicable in cases where one seeks to impose liability upon an occupier of property for the death of or injury to a trespassing child. Likewise, the conventional duty is not applicable in such cases, except where physical harm to a trespassing child is caused by a natural condition
upon the property. When physical harm to a trespassing child is caused by a natural condition
upon the property, the conventional duty which an occupier owes to a trespasser is the only duty owed to the trespassing child. In all other cases, the duty which an occupier of property owes to a trespassing child is set forth in § 339, Restatement (Second) of Torts:
 " 'A possessor [occupier] of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
 " '(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
 " '(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
 " '(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
 " '(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
 " '(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' " (Emphasis in Motes.)
Reviewing the record in the light most favorable to the plaintiff and resolving all reasonable doubts against the defendants, which our standard of review mandates when the trial court has entered summary judgment in favor of the defendants (Motes v. Matthews, supra, at 1123), we find that the trial court had the following facts before it at the time it granted the defendants' motion for summary judgment:
The swimming pool was an artificial condition upon Hale's land. Hale had reason to know that such a pool, located at 1313 Boxwood, in Huntsville, Alabama, would be a place that children would likely trespass during the early afternoon of a midsummer's day. On occasions prior to the day on which Demetrius drowned, Haswell, as Hale's employee, had observed children, who were not children of the tenants at University Parke Apartments, using the pool. The pool was 10 feet deep at the place where Demetrius's body was found.
The pool was a "public swimming pool" subject to the "Swimming Pool Recommendations" issued by the Bureau of Environmental Health of the Alabama State Department of Health.[2] Among those recommendations are the following:
 "Lifesaving Equipment: Each pool shall be provided with not less than one unit of lifesaving equipment consisting of: . . . (3) a 1/4-inch heaving line equivalent in length to the width of the pool."
 "Conduct of Bathers: The pool management should prohibit boisterous or rough play, except supervised water sports, in all portions of the pool, pool enclosure, bathhouse and appurtenances."
 "Fence: A man-proof fence or other barrier should completely encircle the pool and should be located adjacent to *Page 137 
the runways. The only unlocked opening should be to the bathhouse. Other openings may be provided for use of operating personnel if kept locked at all times that they are not in use."
The pool was also subject to the "Regulations Governing the Construction, Equipment and Operation of Public Swimming Pools" promulgated by the Madison County Board of Health, and those Regulations contain the following provisions applicable to pools at apartment houses:
 "Every swimming pool shall be operated under the close supervision of a trained operator. . . ."
 "Clearness — at all times when the pool is in use the water shall be sufficiently clear to permit a black disc six inches in diameter on a white field, when placed on the bottom of the pool at the deepest point, to be clearly visible from the sidewalks of the pool at all distances up to ten yards measured from a line drawn across the pool through said disc. The main drain(s) shall be visible at all times. Failure to meet either of these requirements shall constitute grounds for immediate closing of the pool."
 "An effective fence or barrier, at least 5 feet high, with entry at [the] shallow end, shall be provided so as to prevent unauthorized entry to the pool. A qualified attendant, with a valid certificate of lifesaving, shall be on duty at or near the poolside at all times when a pool is open to use by bathers. The attendant shall be in full charge of bathing and have authority to enforce all rules of safety and sanitation, and shall be trained in first aid and the use of lifesaving apparatus."
Again, viewing the evidence in a light most favorable to the plaintiff, the following additional facts were before the court:
Demetrius was an excellent swimmer, who received four to five hours of swimming supervision each week. She was the top swimmer among the 10-year-olds in her swimming class. She had no physical disability or infirmities before her death. She did not pass the third grade and was going to have to repeat that grade the following year. She did not pass the following courses: science, history, English, spelling, and math. Many neighborhood children swam in the pool at University Parke Apartments. The gate in the fence around the pool was frequently unlocked and opened. The defendants knew that children who were not children of tenants or guests of tenants swam in the pool. On the day Demetrius drowned, the pool was unsupervised. The gate was unlocked and opened, and the chain that sometimes secured the gate was locked to the fence next to the gate. There were many children (35 to 50) swimming in the pool. The children had put chairs around the edge of the pool and would get a running start and jump over the chairs into the pool. The pool water was very cloudy and milky looking. A person could not see more than two feet under the surface of the water. Even standing on the edge of the pool, a person could not see the bottom of the pool. William Harris, a tenant at University Parke Apartments, was sitting in a lounge chair by the pool, when two small children told him that someone was having trouble in the pool. He could not see anyone under the water even when he went to the edge of the pool. The children pointed to a certain area and Harris found Demetrius there after he jumped into the pool. Demetrius was five feet under water, floating face down, when he found her. Harris pulled Demetrius from the water and started cardiopulmonary resuscitation (CPR) on her. She was not breathing and appeared to have been under the water for a long time. After the police and ambulance personnel arrived, they tried for about 40 minutes, unsuccessfully, to revive Demetrius; they then took her to a hospital. The day after Demetrius drowned, the pool was vacuumed, and after the vacuuming the water was clear enough to see the bottom of the pool. At the time Demetrius drowned, however, nothing was visible more than two feet below the surface of the water; *Page 138 
there was no 1/4-inch heaving line equivalent in length to the width of the pool in the pool area at the time Demetrius drowned; there was no trained operator supervising the pool; and there was no qualified attendant, with a valid certificate in lifesaving, near the poolside.
Restatement (Second) of Torts, § 339 (1965), applies to artificial water conditions such as swimming pools. Water is not exempt from our commitment "to give primacy to child safety rather than unrestricted property rights." Motes, supra, at 1122.
Duty is, as the distinguished trial judge noted, a matter of law. Sungas, Inc. v. Perry, supra; Alabama Power Co. v.Dunaway, 502 So.2d 726 (Ala. 1987). The duty owed by a possessor or occupier of land is to exercise reasonable care to eliminate the danger caused by an artificial condition upon the land or to protect trespassing children from that danger. This could have been done by compliance with the State and County regulations. The burden of complying with these regulations (i.e., prohibiting boisterous or rough play in the pool area; keeping the gate closed so that children with childish curiosity and a childish sense of play could not enter the pool area; keeping the water clear so that the bottom of the pool would be visible at the deepest point; maintaining a 1/4-inch heaving line equivalent in length to the width of the pool; and making certain that Haswell, whose duties included close supervision of the swimming pool, remained on duty at or near the poolside at all times that the pool was open to swimmers) is slight as compared to the danger of children drowning. It is a fact question in this case as to whether this duty was breached by the defendants; and, if so, as to whether this breach of duty was the proximate cause of Demetrius's death.Sungas, Inc. v. Perry, supra, at 1089.
Did 10-year-old Demetrius realize the risk involved? We certainly cannot hold that she did as a matter of law. Demetrius's mental ability did not seem to match her athletic ability.
Justice Bloodworth, in King v. South, 352 So.2d 1346, 1347
(Ala. 1977), wrote:
 "It has long been the law in Alabama that a child between the ages of 7 and 14 is prima facie incapable of contributory negligence. Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236
(1975); Birmingham Ry., Light Power Co. v. Landrum, 153 Ala. 192, 45 So. 198 (1907).
 "However, a child between the ages of 7 and 14 years may be shown by evidence to be capable of contributory negligence by showing that he possesses that discretion, intelligence, and sensitivity to danger which the ordinary child, who is 14 years of age, possesses. McGough Bakery Corp. v. Reynolds, 250 Ala. 592, 35 So.2d 332
(1948); Patrick v. Mitchell, 242 Ala. 414, 6 So.2d 889 (1942)."
Summary judgment should not have been entered for the defendants.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] Hale Properties, Inc., was originally a defendant, but Ms. Fletcher conceded that it was not a proper party, and it was dismissed from the action. Madison County Department of Public Health was an original defendant, but it was given a summary judgment, which was made final pursuant to Rule 54(b), A.R.Civ.P. Ms. Fletcher did not appeal from that judgment.
[2] The Bureau's recommendations include the following definition: "3. Public Swimming Pools: For purposes of Minimum Standards, public swimming pools shall be defined as listed in the following categories, based upon specific characteristics of size, usage, and other factors: . . . TYPE C. Motels, hotels, and apartments, multiple housing units."