The plaintiff appeals from a summary judgment in favor of all defendants. The trial court wrote no opinion; it simply entered its judgment on the case action summary sheet, without explanation as to why the summary judgment was granted. This action was filed prior to June 11, 1987; therefore, the "scintilla rule of evidence" applies. See Code 1975, §12-21-12.
The facts of the case show that the plaintiff, Michael Johnson, was severely injured in the operation of an E-150 industrial die press manufactured by defendant Niagara Machine and Tool Works (hereinafter "Niagara") and distributed by defendant Modern Machinery Associates, Inc. (hereinafter "Modern"). Johnson used the press to manufacture a plate that is used in the mining industry as roofing support. The manufacturing process required Johnson to feed raw steel stock into the press. The press then cut the stock into plates, and several plates could be produced from a single piece of stock. At the end of a cycle in which a piece of stock was put through the press, waste steel would be left in the *Page 90 
operating area of the press ram. That waste would have to be removed with a hand-tool or with the naked hand.
Johnson was injured by a large cutting tool attached to the press ram. His machine had been operating in a "continuous" mode, in which the ram came down at a rate of 60 strokes per minute. The machine had just finished cycling a piece of stock, and there was waste material left in the area of the press ram. There was evidence that Johnson then hit the "stop" button on the operator's station and reached into the ram area to retrieve the waste. The ram, however, failed to cease operation, and Johnson's hand was amputated by the cutting tool attached to the press ram.
Johnson sued the press manufacturer and distributor under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and alleging breach of warranty, and he sued certain co-employees for an alleged negligent or wanton failure to provide him with a safe workplace, relying on Code 1975, §25-5-11. Specifically, Johnson's complaint alleges, with regard to Niagara, that the press involved in this accident was unreasonably dangerous due to design or manufacturing flaws, although the complaint does not specify what those flaws were. The complaint also alleges that Niagara negligently or wantonly failed to warn Johnson of the dangers that were inherent in the use of its press due to an alleged negligent or wanton design thereof.
We begin our analysis by noting that summary judgment is controlled by A.R.Civ.P., Rule 56, which states that, in order for summary judgment to be proper, there must be no genuine issue as to any material fact and the movant must be entitled to a judgment as a matter of law. We will consider this summary judgment separately as to the products liability and the co-employee aspects of the suit.
 Products Liability (AEMLD) Claim
Johnson sued Niagara and Modern under the AEMLD. This doctrine had its inception in the case of Casrell v. AltecIndus., Inc., 335 So.2d 128 (Ala. 1976). In Casrell, we laid down a new rule with respect to products liability law. Therein we stated:
"To establish liability, a plaintiff must show:
 "(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 "(2) Showing these elements, the plaintiff has proved a prima facie case although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.
 "By extending the doctrine of manufacturer's liability, we are not invading the province of the Legislature. Developing case law is a proper role for this court, and that is what we are doing in this case. We are here removing the defense of due care in the manufacture and sale of the product. The care with which a defective product is manufactured and sold is now immaterial, when given the allegation and proof of injury resulting proximately from the product's defective condition."
Casrell 335 So.2d at 132-33. In Casrell, we also set out certain defenses applicable under the AEMLD:
 "Ordinarily, defenses fall into two categories: (1) general denial, and (2) affirmative defenses.
 "Under the general denial defense, the defendant may offer evidence to counter plaintiff's prima facie case. For example, where plaintiff's evidence [indicates] that the product was defective when it left the manufacturer's control and possession, *Page 91 
the manufacturer can rebut this evidence, proving the defect, if any, occurred while in the possession or control of the distributor or retailer. Moreover, the defendant may affirmatively show that it did not contribute to the defective condition, had no knowledge of it, and had no opportunity to inspect the product. In other words, [that] there was no causal relation in fact between his activities in handling the product, and its defective condition. But, this 'lack of causal' relation defense is not to be understood as being available to a manufacturer, where the defect is in a component part, or to a defendant who distributes a product under its trade name. Sears, Roebuck Co. [v. Morris, 273 Ala. 218, 136 So.2d 883 (1961)]. The defendant may assert the negligent conduct of the plaintiff in using the product, as well as the defense of assumption of risk. [Cf. Restatement (Second) of Torts (1966), § 401A, comment k.]"
Id. at 134.
Niagara and Modern moved for summary judgment, alleging numerous grounds. Niagara argues in its brief in support of its motion that the press had been substantially modified once it left Niagara's control and, therefore, that Niagara had no duty to warn Johnson about the dangers of using the press. Modern's motion incorporated the arguments of all other defendants by reference and further alleged, through affidavit, that, while it distributed the machine, it had never had possession of the machine and that none of its agents or employees had ever worked on the machine. By incorporating the other defendants' motions, Modern made a claim of contributory negligence against the plaintiff, Johnson.
With respect to Niagara's claim of substantial modification, we note that a defendant may defeat a plaintiff's claim by showing that the defect, if there was one, "occurred while the product was [in] the possession or control of the distributor or retailer." Atkins v. American Motors Corp., 335 So.2d 134
(Ala. 1976). Here, however, the distributor specifically asserts that it never had possession or control of the machine but that the machine was shipped directly to Johnson's employer from Niagara. Also, we find evidence to indicate that the E-150 model press was generally marketed in a "naked" configuration, which was easily modified. The press was sold with no safety equipment, i.e., with no guards or barriers. Thus, Niagara is in the seemingly anomalous position of arguing that the addition of a barrier guard to its naked device is a substantial change within the meaning of the AEMLD. Furthermore, evidence tended to show that Niagara had knowledge of the numerous possible applications of the machine and the many possible variations of the configuration of the machine. Niagara, however, did not participate in the numerous changes made to the machine by Johnson's employer. The modifications include the addition of a large flywheel and hub arrangement, a homemade automatic feed, a removable barrier guard, and a change in the location of the operator's station to the front of the press.
It is clear that in Alabama the mere fact that a product has been modified by the buyer subsequent to the sale does not always relieve a manufacturer of liability. In IndustrialChemical v. Hartford Acc. Indem. Co., 475 So.2d 472 (1985), we stated:
 "It is fair to hold the manufacturer (and its insurer) liable for bodily injury caused by a defect in the product, even though the product has been changed, if the injury was not caused by the change.
 "It is equally fair to hold the manufacturer or its carrier liable for bodily injury caused by a defect in the product, even though the product is undergoing demonstration, installation, servicing, or repair, if these activities did not cause the injury."
Id. at 476. See also, Bullen v. Roto Finishing Systems,435 So.2d 1256 (Ala. 1983); Brown v. Terry, 375 So.2d 457 (Ala. 1979).
Niagara argues, in effect, that it should not be liable for Johnson's injuries because the system into which the machine is integrated changes from buyer to buyer. Thus, Niagara argues that it is the duty of *Page 92 
the buyer/operator to select guarding equipment and safety devices, because, Niagara says, it is the buyer and not Niagara who designs the manufacturing system into which the press is integrated. The deposition of Stanton Cheyney, a Niagara corporate officer, indicates that it would be impossible for Niagara to design a guard system that would meet the needs of the many types of manufacturing systems into which the press may be fitted.
The United States Court of Appeals for the Fifth Circuit has followed this argument in the decision of Gordon v. NiagaraMachine Tool Works, 574 F.2d 1182 (5th Cir. 1978). In Gordon
that court stated:
 "Plaintiff contends, alternatively, that Niagara should be held subject to strict liability in tort under § 402(a), Restatement (Second) of Torts. Section 402(a) is a firmly settled principle in Mississippi's jurisprudence, and we regard this question, which was not reached in our prior ruling, to remain open on remand. It is first argued by plaintiff that the press, having been sold by the manufacturer without guarding devices, was, per se, in a defective condition unreasonably dangerous for the intended user. Although some jurisdictions appear to accept this contention, Bexiga v. Havir Mfg. Co., 60 N.J. 402, 290 A.2d 281
(1972); Rhoads v. Service Machine Co., 329 F. Supp. 367
(E.D.Ark. 1971), we decline to find a multifunctional, general purpose machine, like the Niagara press, was in defective condition when marketed without guarding devices. The machine having been designed for many kinds of operation, it was incumbent upon the machine purchaser to select safety devices appropriate for his particular function. This procedure was the universal custom which prevailed in the industry in 1954, and ever since. Moreover, we are not convinced that any single device known to the power press industry in 1954, such as the mechanical interlock which Dr. Youngdahl described in his testimony, could have been designed to prevent repeat action of a press with a mechanical positive full-revolution clutch and an open back inclinable configuration to allow feeding of material from all four sides. Such a device would have materially curtailed the myriad uses for which Niagara's press was designed, manufactured and marketed. Ward v. Hobart Mfg. Co., 450 F.2d 1176, 1184-85 (5 Cir. 1971), applying Mississippi law. We are mindful, however, that in a proper case, the absence of warning to the user of a dangerous product can trigger § 402(a) liability. '[L]ack of an adequate warning, in itself, renders a product defective or unreasonably dangerous within the meaning of products liability law.' Martinez v. Dixie Carriers, [529 F.2d 457 (5th Cir. 1976)] at 465, citing Alman Bros. Farms Feed Mill, Inc. v. Diamond Laboratories, Inc., 437 F.2d 1295, 1303 (5 Cir. 1971); Davis v. Wyeth Laboratories, 399 F.2d 121, 126-27, 128-30 (9 Cir. 1968)."
574 F.2d at 1189-90.
We are inclined to agree with the analysis of the Fifth Circuit on this matter. Unquestionably, it has been the custom in the industry for many years for the purchaser of general purpose machinery, such as the press involved here, to assume responsibility for installing a guard on the machine. Moreover, evidence in the record tends to show that both American National Standards Institute standards and Occupational Safety and Health Administration standards place this burden on the purchaser-user of such equipment. Furthermore, this ruling is supported by common sense. It would be an incredibly heavy burden for manufacturers to bear if they should be charged with responsibility for the possible negligence of a user-purchaser in designing the system into which their machines are integrated. To allow such a rule would require that manufacturers build and market only "perfect" products or continually inspect and monitor the use of machines they have sold. We do not believe that such a rule should become law in this state. Thus, we rule today, that Niagara is not liable under the AEMLD, because the E-150 press had been substantially modified after it left the control of Niagara. Niagara should not be charged with a duty to *Page 93 
guard or make safe all possible applications of its general purpose product. The possible application of a general purpose machine in a given manufacturing process not designed by the manufacturer is unforeseeable as a matter of law. Summary judgment is proper, therefore, in favor of both Niagara and Modern, on the AEMLD claim. Having held that summary judgment is proper because of unforeseeable modifications, we decline to reach the issue of whether Niagara provided an adequate warning of possible dangers to the user.
 Co-Employee Claim
Johnson also sued three co-employees alleging negligent or wanton failure to provide a safe workplace. We note that Code 1975, § 25-5-11 now bars co-employee suits based on negligent or wanton failure to provide a safe workplace. However, the bar of § 25-5-11 is not applicable to Johnson's cause of action because the incident he complains of occurred prior to the effective date of this statute.
The co-employees' motion for summary judgment stated only one ground: contributory negligence. We believe summary judgment is improper as to these defendants.
We note at the outset that the question of contributory negligence is generally a question of fact for the jury.Sun Gas, Inc. v. Perry, 450 So.2d 1085 (Ala. 1984). However, the conduct of the plaintiff in certain cases may be so lacking in reasonable care for his own safety that reasonable minds may not differ on the issue of the plaintiff's own negligence; in such a case the question becomes one of law. Elba WoodProducts, Inc. v. Brackin, 356 So.2d 119, 124 (Ala. 1978). Moreover, if there is a scintilla of evidence to the contrary, the question of contributory negligence must go to the jury.Id. See also, Central Alabama Elec. Co-op v. Tapley,546 So.2d 371 (Ala. 1989) (finding of contributory negligence as a matter of law requires that plaintiff put himself in danger and appreciate the danger consciously at the time he does so);Terry v. Life Insurance Co. of Georgia, 551 So.2d 385 (Ala. 1989).
The case of Wallace v. Doege, 484 So.2d 404 (Ala. 1986), describes the defendant's burden in proving contributory negligence:
 "In order to prove contributory negligence, the defendant must show that the party charged: (1) had knowledge of the condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care, by placing himself in the way of danger. Hatton v. Chem-Haulers, Inc., 393 So.2d 950
(Ala. 1980); Baptist Medical Center v. Byars, 289 Ala. 713, 271 So.2d 847 (1972)."
Doege, 484 So.2d at 406.
In that case we held that the plaintiff Doege had been contributorily negligent as a matter of law. The evidence showed that the plaintiff had 25 years' experience in handling saws, that she had been instructed as to the proper method of cleaning the saw that injured her, that she was aware that no more than two persons had inspected the saw for safety, if it had been inspected at all, and that Doege knew she could be injured if she tried to clean the saw blade without stopping the saw. Consequently, we stated that the only conclusion to be reached was that Doege knew of the danger, appreciated it, and then put herself in danger by trying to clean the blade without turning the saw off. Id. See also Fenley v. Rouselle Corp.,531 So.2d 304 (Ala. 1988) (plaintiff had been press operator for 10 years and was thoroughly familiar with operations of the press and the surrounding circumstances and knew that company policy required him to stop all power before attempting die change).
The record does not compel a finding of contributory negligence in the case at bar. There was evidence that Johnson had only a few months' experience in working at the press that injured him; that the only guard at the "nip point" of the press was easily detached, and that this guard did not reach all areas of the nip point; that the nip point could be entered from other unguarded directions; that a warning label at the control *Page 94 
station had been covered over; and that Johnson had not been trained to use handtools and was encouraged by management to operate the press as fast as he could. This evidence suggested that he used the press on a continuous cycle and often had to use his bare hand rather than a tool to remove scrap.
There was also evidence to indicate that up until the day of the accident safety rules were not enforced, and that other operators of presses did not use handtools and were not injured. See, Evans v. Tanner, 286 Ala. 651, 244 So.2d 782
(1971) (plaintiff is not contributorily negligent if he merely does what other prudent people do without injury). Johnson's deposition testimony states that he was never reprimanded for failure to use handtools to remove scrap; the evidence also indicates that other operators were not reprimanded either, although the practice allegedly was common. Moreover, Johnson's testimony shows that he asked for a copy of the press operator's manual but that none was ever supplied to him. Testimony also indicates that at "safety" meetings supervisory personnel stressed high production and gave little, if any, attention to safety matters. However, testimony does indicate that a safety meeting was held on the night of Johnson's accident and that at that meeting the proper use of handtools was stressed, although allegedly the rule regarding their use was not enforced. Evidence also indicated that before he reached into the nip point Johnson pressed the "stop" button in order to stop the press's cycle. After considering all of these factors, we find that there is at least a scintilla of evidence to show that Johnson was not contributorily negligent. Johnson may have been "heedless" of the danger presented by the press, but this does not rise to the level of contributory negligence as a matter of law. Decatur Light, P. F. Co. v. Newsom,179 Ala. 127, 59 So. 615 (1912). Therefore, summary judgment in reliance on a finding of contributory negligence as a matter of law was improper; whether Johnson was contributorily negligent was a question for the jury.
Accordingly, we affirm the summary judgment as to the AEMLD claims, and we reverse the summary judgment as to the co-employee defendants and remand for further proceedings not inconsistent herewith.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
JONES, SHORES and KENNEDY, JJ., concur.
MADDOX, ADAMS, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.