585 So.2d 791 (1991)
Vickie Elizabeth OSMER
v.
BELSHE INDUSTRIES, INC.
89-1359.
Supreme Court of Alabama.
May 3, 1991.
Rehearing Denied August 9, 1991.
*792 Jack B. Sabatini of Smith, Gaines, Gaines & Sabatini, Huntsville, for appellant.
Daniel C. Boswell, Huntsville, for appellee.
HORNSBY, Chief Justice.
Vickie Elizabeth Osmer, as administratrix of the estate of Ricky Dean Osmer, appeals from a summary judgment entered in favor of defendant Belshe Industries, Inc. (hereinafter "Belshe"), in an action alleging liability under the Alabama Extended Manuacturer's Liability Doctrine ("AEMLD"). We reverse and remand.

Facts
Ricky Dean Osmer was employed by Cherokee Cable Company as a heavy equipment operator. On February 12, 1982, the owner of a tractor-trailer truck was stuck in mud one-half mile from a Cherokee Cable Company jobsite, and the owner of the tractor-trailer requested Osmer's assistance to help push it out of the mud. Osmer loaded a John Deere 450B bulldozer onto a Model T-8 two-axle flatbed trailer manufactured by Belshe and drove to where the tractor-trailer was stuck in the mud. After pushing the tractor-trailer out of the mud, Osmer attempted to reload the bulldozer back onto the trailer.
The company truck with the Belshe trailer was parked with the left wheels on the pavement and the right wheels on the shoulder of the highway. The record indicates that the tires of the trailer sank into the soft ground of the highway shoulder as Osmer attempted to drive the bulldozer onto the trailer and that the bulldozer began to slide off the side of the trailer. As it began to slide, Osmer jumped off the bulldozer onto the shoulder of the highway. When the bulldozer slid off the trailer, its track struck Osmer. He was killed instantly.
Vickie Osmer sued Belshe under the AEMLD, alleging negligence and wantonness in the design, manufacture, and distribution of the trailer; negligent or wanton failure to warn Ricky Osmer of the dangers associated with the use of the trailer; and breach of express and implied warranties.[1] Specifically, Osmer alleged that *793 Belshe failed to provide steel angles or channel stops along the edge of the trailer or other mechanisms designed to prevent equipment from sliding off the trailer.
Belshe moved for a summary judgment on October 6, 1988. After various hearings and continued discovery, the trial court granted Belshe's motion for summary judgment on December 20, 1989.

Issues
Osmer presents four issues on appeal:
(1) Whether the trial court erred in holding that there was no evidence that Belshe had built and sold a "defective" product that killed Ricky Osmer and, therefore, that the plaintiff had no cause of action under the AEMLD.
(2) Whether the trial court erred in holding that the trailer was a "general purpose" product and that, under prior holdings of this Court, Belshe was therefore not liable;
(3) Whether the trial court erred in holding that Belshe was not liable to Osmer because of a lack of causal relationship between the manufacture of the trailer and the death of Ricky Osmer; and
(4) Whether the trial court erred in holding that Ricky Osmer was contributorily negligent as a matter of law, and that Belshe was therefore not liable.

Discussion
The plaintiff argues on appeal that she presented sufficient evidence to support her cause of action against Belshe and, therefore, that summary judgment was improper.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
"`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989) (quoting Schoen v. Gulledge, 481 So.2d 1094 (Ala.1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
The action in the instant case was commenced before June 11, 1987; therefore, the applicable standard of proof is the "scintilla rule." Ala.Code 1975, § 12-21-12. The summary judgment motion must be denied if there is a scintilla of evidence in support of the plaintiff's claims. Kimbrel v. Mercedes-Benz Credit Corp., 476 So.2d 94 (Ala.1985); Ray v. Montgomery, *794 399 So.2d 230, 232 (Ala.1980); see A.R.Civ. P., 56(c), and comments thereto.

Products Liability (AEMLD) Claim
Osmer contends that Belshe is liable under the AEMLD for manufacturing, designing, and distributing a defective and unreasonably dangerous product. In order to recover under the AEMLD, she must prove that
"[her husband] suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to [him] ... as the ultimate user or consumer, if
"(a) the seller is engaged in the business of selling such a product, and
"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."
Atkins v. American Motors Corp., 335 So.2d 134, 141 (Ala.1976); Casrell v. Altec Industries, Inc., 335 So.2d 128, 132 (Ala. 1976). Proof that a manufacturer, supplier, or seller marketed a product not reasonably safe when applied to its intended use in the usual and customary manner constitutes negligence. Casrell, 335 So.2d at 132.
The fact that Ricky Osmer was killed does not by itself establish the presence of a defect in the trailer. See Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala.1981). In Haven Hills Farm the Court emphasized that it is not enough to show that the product failed to perform when applied to its intended use and that the plaintiff was injured; the product also must have been sold with a defect or in a defective condition in order to have a successful cause of action under the AEMLD. The terms "defect" and "defective" under this doctrine have been defined as follows:
"[A] `defect' is that which renders a product `unreasonably dangerous,' i.e., not fit for its intended purpose....
"....
"`Defective' is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement [(Second) of Torts (1965)] says defective condition applies when, at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer."
Casrell, 335 So.2d at 133.
The trial court, in ruling on a summary judgment motion, may consider any evidence before it that would be admissible at trial. Sapp v. Beech Aircraft Corp., 564 So.2d 418 (Ala.1990). In support of her contention that the flatbed trailer was defective, Osmer provided the trial court with the affidavit of an engineering expert, who stated:
"Based on my inspection of the trailer and my review of the industry standards and publications, and based on my experience, I am of the opinion that the Belshe trailer was defective and unreasonably dangerous for use in its intended and/or foreseeable manner based on at least the following defects. There may in fact be additional defects discovered prior to the trial of this case:
"1. The trailer was not equipped with an angle or channel restraint on the sides of the trailer which would prevent equipment such as the John Deere bulldozer from sliding off as occurred in this case.
"2. The oak wood floors are covered with steel plates. It is highly foreseeable that the bulldozers with steel tracks would be loaded onto the Belshe trailer and that those steel tracks may be covered with mud and/or water. This steel against steel situation substantially reduces the static friction and creates a situation in which a slide such as we have in this case is highly likely to occur.
"3. There are no warnings on the trailer regarding methods of loading equipment. Warnings should include but not be limited to discussion of the slope, speed, direction and dangerousness of loading heavy equipment onto a trailer of this design.
"Based on the three items set forth above it is my opinion that the Belshe trailer involved in this accident was defective and unreasonably dangerous when used in a foreseeable manner."
*795 The Trailer as a "General Purpose Product"
Belshe contends that the expert's affidavit quoted above cannot circumvent or defeat the rule of law enunciated in Johnson v. Niagara Machine & Tool Works, 555 So.2d 88 (Ala.1989), where the Court refused to find that a multifunction, general purpose machine was in a defective condition when sold without guarding devices. In that case, a third-party claim was filed against Niagara Machine & Tool Works, the manufacturer of a press ram. The plaintiff's hand had been amputated when he hit a stop button on the machine and reached into the ram area.
In affirming a summary judgment for the manufacturer, the Court in Johnson adopted the rule of law stated in Gordon v. Niagara Machine & Tool Works, 574 F.2d 1182 (5th Cir.1978).[2] In that case the court specifically noted that it was incumbent upon the machine purchaser to select safety devices appropriate for his particular function. 574 F.2d at 1190. This Court stated in Johnson:
"It would be an incredibly heavy burden for manufacturers to bear if they should be charged with responsibility for the possible negligence of a user-purchaser.... To allow such a rule would require that manufacturers to build and market only `perfect' products or continually inspect and monitor the use of machines they have sold. We do not believe that such a rule should become law in this state.... [The manufacturer] should not be charged with a duty to guard or make safe all possible applications of its general purpose product. The possible application of a general purpose machine in a given manufacturing process not designed by the manufacturer is unforeseeable as a matter of law."
555 So.2d at 92-93.
Belshe argues here that, like the press in Johnson, the trailer was a "general purpose" product. Gordon Belshe, owner and chairman of the board of Belshe, testified in his deposition that Belshe trailers were designed to haul a variety of equipment, depending upon the specific purposes of the purchaser. Mr. Belshe further indicated that Belshe trailers were commonly used to transport equipment to construction sites and that this equipment included bulldozers.
We find that the facts in this case are clearly distinguishable from those in Johnson, supra, with respect to what constitutes a "general purpose" product under Alabama law. In Johnson, the product involved was a press that accepted a large number of different configurations of dies and molds as well as various safety and guarding devices. That machine could not be used for any particular purpose until the purchaser-user had made substantial modifications and additions for its use in a particular manufacturing process. The gist of this Court's opinion in Johnson was that our law would not require manufacturers of general purpose products to foresee and forestall any negligent use of the products when there were nearly unlimited possible uses and configurations.
This is not the case before us. In this case, the trailer in question was immediately usable for hauling the sort of equipment that was being hauled when Ricky Osmer was killed. The president of Belshe admitted that trailers like the one in question were commonly used to haul bulldozers to and around construction sites. There was certainly more than a scintilla of evidence that this trailer would forseeably be used to haul a bulldozer. The manufacturer also indicated that it could and would install guardrails if they were requested, but it did not provide any documentation as to the availability to, or use of guardrails by, purchasers at the time the trailer in question was purchased. In addition, the manufacturer was knowledgeable about various types of nonslip surfaces that could have been incorporated into the design of the trailer.
The trailer in this case is not like the press in Johnson. In fact, it was designed to haul equipment of the type being hauled *796 when the accident occurred, and it was readily usable for that purpose upon purchase. Although designed for that purpose, the trailer was not equipped with any railing or channeling or other nonslip mechanism to prevent the equipment being transported from sliding off a steel base that could become slippery, and the purchaser-user was not made aware that such safety measures were available. Because there was evidence suggesting that the possibility of sliding equipment was readily foreseeable, this Court will not hold that this trailer is a "general purpose" product as to which the manufacturer can avoid liability as a matter of law. Accordingly, the summary judgment cannot be affirmed on the basis that the trailer was a "general purpose" product.

Proximate Cause
With respect to the issue of proximate cause, the record includes eyewitness testimony that Ricky Osmer was struck by the track of the bulldozer as it slipped off the side of the trailer. As this Court has often noted, summary judgment is rarely appropriate in cases involving issues of proximate causation, because such issues are dependent on the facts of the case. Fletcher v. Hale, 548 So.2d 135 (Ala.1989); Yarborough v. Springhill Memorial Hosp., 545 So.2d 32 (Ala.1989); and Tolbert v. Gulsby, 333 So.2d 129 (Ala.1976).
In light of the deposition testimony of the eyewitness, the affidavit of the plaintiff's expert, and the deposition testimony of the manufacturer's representative that guardrails were available for use on such trailers to prevent similar accidents, we must conclude that there was certainly a scintilla of evidence that Ricky Osmer's death would not have occurred had the trailer been designed to prevent equipment slippage. In short, the question whether the absence of a rail or channel would have prevented Ricky Osmer's death is a question for a jury and cannot be answered on a motion for summary judgment.

Contributory Negligence
The question whether Ricky Osmer was contributorily negligent as a matter of law so as to warrant the entry of a summary judgment turns on an analysis similar to that employed regarding the question of proximate cause. Questions of negligence incorporate the same sort of factual evaluations as do questions of proximate cause, and these factual evaluations are the province of the jury. It follows that a summary judgment based on contributory negligence is seldom proper. Jones v. Power Cleaning Contractors, 551 So.2d 996 (Ala. 1989), and Knowles v. Poppell, 545 So.2d 40 (Ala.1989).
Here, the only evidence of contributory negligence was the testimony of the eyewitness that in his opinion Ricky Osmer's speed of three to four miles per hour in driving the bulldozer onto the trailer was too fast. When questioned further, the witness was unable to testify as to what speed was necessary to get the bulldozer up the ramp. The witness further indicated that the slope and location of the trailer did not appear to him to be unsafe. The record also contains evidence from which one could reasonably infer that Ricky Osmer was a heavy equipment operator of competence and experience.
Our law of summary judgment requires a court to leave for the jury the question of contributory negligence when there is an issue of material fact on that question upon which reasonable persons could disagree. Economy Fire & Casualty Co. v. Goar, 551 So.2d 957, 959 (Ala.1989), and Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1982).
This issue ultimately becomes whether evidence of one witness that Ricky Osmer's act of driving the bulldozer up the ramp and onto the trailer at three to four miles per hour is such strong evidence of negligence that no reasonable person could conclude that Ricky Osmer was not negligent. We conclude that whether a speed of three or four miles per hour was too fast is an issue on which reasonable persons could disagree.

Conclusion
The record contains at least a scintilla of evidence in support of each element of the *797 plaintiff's AEMLD claim and at least a scintilla of evidence that the trailer in question was not a "general purpose" product within the meaning of Johnson v. Niagara Machine & Tool Works, supra. Further, the summary disposition of the issues of proximate cause and contributory negligence in this case was not appropriate. It follows that the trial court's summary judgment must be reversed and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
MADDOX, ALMON and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
The majority holds that a flatbed trailer is not, as a matter of law, a "general purpose" product, and that the flatbed trailer in this case was "unreasonably dangerous" and not fit for its intended use.
The majority reaches this conclusion, and attempts to distinguish this Court's recent case of Johnson v. Niagara Machine & Tool Works, 555 So.2d 88 (Ala.1989), because there was some evidence (1) that the trailer was not equipped with an angle or channel restraint on its sides that would prevent a bulldozer from sliding off the trailer; (2) that it was manufactured with a wooden flatbed that was covered with steel plates; and (3) that there were no warnings on the trailer regarding the methods for safely loading equipment.
Admittedly, an affidavit of an expert was introduced stating that the trailer was "defective" and "unreasonably dangerous," and the majority quotes this affidavit in its opinion,[3] but this affidavit, in my opinion, should not be allowed to circumvent or defeat the rule of "common sense" set forth in Johnson, in which there was also evidence that the machine involved was defective and unreasonably dangerous.[4]
The majority recognizes that the fact that Osmer was injured does not alone establish the presence of a defect in the trailer and cites Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991 (Ala. 1981), for this proposition, but the majority fails to apply the very rule that it announces. In Haven Hills Farm, Inc., the Court emphasized that it is not enough to show that the product failed to perform when applied to its intended use and that the plaintiff was injured; the product must be sold in a defective condition in order to have a successful cause of action under the AEMLD. The term "defective" as applied under this doctrine has been defined as follows:
"[A] `defect' is that which renders a product `unreasonably dangerous,' i.e., not fit for its intended purpose....
"....
"`Defective' is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement [ (Second) of Torts (1965)] says defective condition applies when, at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer."
Casrell v. Altec Industries, Inc., 335 So.2d 128, at 133 (Ala.1976).
I cannot distinguish this case from Johnson v. Niagara Machine & Tool Works, in which the Court refused to find that a multifunctional, general purpose product was in a defective condition when sold without guarding devices and without a warning to users of possible dangers.
In Johnson, a third-party claim was filed against Niagara Machine & Tool Works, the manufacturer of a press ram. Johnson's arm had been amputated when he hit a stop button on the machine and reached into the ram area.
In affirming a summary judgment for the manufacturer, the Court adopted the rule of law stated in Gordon v. Niagara *798 Machine & Tool Works, 574 F.2d 1182 (5th Cir.1978).[5] In that case the court specifically noted that it was incumbent upon the purchaser of a general purpose product to select safety devices appropriate for its particular function. 574 F.2d at 1190.
In Johnson, this Court stated the rule that should be applied when the alleged defect is in a multipurpose product:
"It would be an incredibly heavy burden for manufacturers to bear if they should be charged with responsibility for the possible negligence of a user-purchaser in designing the system into which their machines are integrated. To allow such a rule would require that manufacturers build and market only `perfect' products or continually inspect and monitor the use of machines they have sold. We do not believe that such a rule should become law in this state.... [The manufacturer] should not be charged with a duty to guard or make safe all possible applications of its general purpose product. The possible application of a general purpose machine in a given manufacturing process not designed by the manufacturer is unforeseeable as a matter of law."
555 So.2d at 92-93.
Based upon my analysis of the rule of law announced in Johnson and upon a comparison of the evidence introduced in support of the plaintiff's claim in that case with the affidavit of the expert presented in this case, I can only conclude that the Belshe flatbed trailer was a general purpose product.
I base my conclusion upon the evidence introduced in support of the motion for summary judgment. Gordon Belshe, owner and chairman of the board of Belshe, testified in his deposition that Belshe trailers were designed to perform a myriad of functions, depending upon the specific purpose of the ultimate purchaser:
"We build trailers for general use and they're all more or less standard production models and unless a customer knows exactly what piece of equipment that he's going to haul or what he's going to do, you know, he needs a flat trailer so he can load and unload in any direction he wants to and any type of machinery he wants to haul. So to put a rail, you have to commit that trailer to one specific job."
There was no testimony that Belshe designed this trailer for a specific job. In 1980, the trailer was purchased as part of a lot with other trailers from Belshe as specified and requested by Ditch Witch of Middle Tennessee, Inc. There was also no testimony regarding how many times the Belshe trailer had been resold after its initial sale to Ditch Witch and prior to its sale to Cherokee Cable and the accident in 1982. There was no evidence that, at the time it was purchased, Ditch Witch informed Belshe of the exact purpose for which this trailer was to be used.
Unquestionably, it has been the custom in the industry for many years for the purchaser of a general purpose product, such as the trailer involved here, to assume responsibility for installing a guard on the trailer if one is desired. Johnson, 555 So.2d at 92; Watts v. TI, Inc., 561 So.2d 1057 (Ala.1990).[6]
I would hold that the flatbed trailer was a general purpose product, and was not, when it was manufactured, in a defective condition unreasonably dangerous for the intended user. The only evidence I find in the record is that the trailer was designed for many uses. The affidavit of the expert fails to consider that the trailer could be used for many purposes other than hauling *799 a tracked vehicle; consequently, I must dissent.
ALMON and STEAGALL, JJ., concur.
NOTES
[1] The original complaint included as defendants John Deere Company ("John Deere"), Harbert Construction Company ("Harbert"), Tractor & Equipment Company ("TEC"), and appellee Belshe Industries, Inc. Summary judgments were entered in favor of defendants John Deere, Harbert, and TEC based upon affidavits that stated that the roll-over protection system ("ROPS") was in place on the bulldozer when it left the possession of those parties.

Osmer subsequently amended her complaint and named eight additional defendants alleged to have been in the distributive chain of the bulldozer. Summary judgments were entered in favor of each of the newly added defendants based on the fact that the ROPS was in place when the bulldozer left their possession.
Osmer does not appeal from any of the summary judgments entered in favor of those defendants in the distributive chain of sale of the John Deere bulldozer. The issues presented in this appeal relate solely to defendant Belshe Industries, Inc.
[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit.
[3] See majority op. at 794 for the substance of this affidavit.
[4] In Johnson, at 92, the Court stated that the rule of that case was "supported by common sense."
[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit.
[6] Cf. Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 859 (Ala. 1981). In Caterpillar, the majority sustained the jury's finding that the tractor was defective because of the failure of the manufacturer to provide a roll-over protective structure, notwithstanding that such a structure was offered as optional equipment. That case, however, did not involve a general purpose product comparable to the trailer involved in this case.