The majority holds that a flatbed trailer is not, as a matter of law, a "general purpose" product, and that the flatbed trailer in this case was "unreasonably dangerous" and not fit for its intended use.
The majority reaches this conclusion, and attempts to distinguish this Court's recent case of Johnson v. NiagaraMachine Tool Works, 555 So.2d 88 (Ala. 1989), because there was some evidence (1) that the trailer was not equipped with an angle or channel restraint on its sides that would prevent a bulldozer from sliding off the trailer; (2) that it was manufactured with a wooden flatbed that was covered with steel plates; and (3) that there were no warnings on the trailer regarding the methods for safely loading equipment.
Admittedly, an affidavit of an expert was introduced stating that the trailer was "defective" and "unreasonably dangerous," and the majority quotes this affidavit in its opinion,[3] but this affidavit, in my opinion, should not be allowed to circumvent or defeat the rule of "common sense" set forth in Johnson, in which there was also evidence that the machine involved was defective and unreasonably dangerous.[4]
The majority recognizes that the fact that Osmer was injured does not alone establish the presence of a defect in the trailer and cites Sears, Roebuck Co. v. Haven Hills Farm,Inc., 395 So.2d 991 (Ala. 1981), for this proposition, but the majority fails to apply the very rule that it announces. InHaven Hills Farm, Inc., the Court emphasized that it is not enough to show that the product failed to perform when applied to its intended use and that the plaintiff was injured; the product must be sold in a defective condition in order to have a successful cause of action under the AEMLD. The term "defective" as applied under this doctrine has been defined as follows:
 "[A] 'defect' is that which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose. . . .
". . . .
 " 'Defective' is interpreted to mean that the product does not meet the reasonable expectations of an ordinary consumer as to its safety. Comment g. of the Restatement [(Second) of Torts (1965)] says defective condition applies when, at the time the product leaves the seller's hands, it is in a condition not contemplated by the ultimate consumer."
Casrell v. Altec Industries, Inc., 335 So.2d 128, at 133 (Ala. 1976).
I cannot distinguish this case from Johnson v. NiagaraMachine Tool Works, in which the Court refused to find that a multifunctional, general purpose product was in a defective condition when sold without guarding devices and without a warning to users of possible dangers.
In Johnson, a third-party claim was filed against Niagara Machine Tool Works, the manufacturer of a press ram. Johnson's arm had been amputated when he hit a stop button on the machine and reached into the ram area.
In affirming a summary judgment for the manufacturer, the Court adopted the rule of law stated in Gordon v. Niagara *Page 798 Machine Tool Works, 574 F.2d 1182 (5th Cir. 1978).[5] In that case the court specifically noted that it was incumbent upon the purchaser of a general purpose product to select safety devices appropriate for its particular function.574 F.2d at 1190.
In Johnson, this Court stated the rule that should be applied when the alleged defect is in a multipurpose product:
 "It would be an incredibly heavy burden for manufacturers to bear if they should be charged with responsibility for the possible negligence of a user-purchaser in designing the system into which their machines are integrated. To allow such a rule would require that manufacturers build and market only 'perfect' products or continually inspect and monitor the use of machines they have sold. We do not believe that such a rule should become law in this state. . . . [The manufacturer] should not be charged with a duty to guard or make safe all possible applications of its general purpose product. The possible application of a general purpose machine in a given manufacturing process not designed by the manufacturer is unforeseeable as a matter of law."
555 So.2d at 92-93.
Based upon my analysis of the rule of law announced inJohnson and upon a comparison of the evidence introduced in support of the plaintiff's claim in that case with the affidavit of the expert presented in this case, I can only conclude that the Belshe flatbed trailer was a general purpose product.
I base my conclusion upon the evidence introduced in support of the motion for summary judgment. Gordon Belshe, owner and chairman of the board of Belshe, testified in his deposition that Belshe trailers were designed to perform a myriad of functions, depending upon the specific purpose of the ultimate purchaser:
 "We build trailers for general use and they're all more or less standard production models and unless a customer knows exactly what piece of equipment that he's going to haul or what he's going to do, you know, he needs a flat trailer so he can load and unload in any direction he wants to and any type of machinery he wants to haul. So to put a rail, you have to commit that trailer to one specific job."
There was no testimony that Belshe designed this trailer for a specific job. In 1980, the trailer was purchased as part of a lot with other trailers from Belshe as specified and requested by Ditch Witch of Middle Tennessee, Inc. There was also no testimony regarding how many times the Belshe trailer had been resold after its initial sale to Ditch Witch and prior to its sale to Cherokee Cable and the accident in 1982. There was no evidence that, at the time it was purchased, Ditch Witch informed Belshe of the exact purpose for which this trailer was to be used.
Unquestionably, it has been the custom in the industry for many years for the purchaser of a general purpose product, such as the trailer involved here, to assume responsibility for installing a guard on the trailer if one is desired.Johnson, 555 So.2d at 92; Watts v. TI, Inc., 561 So.2d 1057
(Ala. 1990).[6]
I would hold that the flatbed trailer was a general purpose product, and was not, when it was manufactured, in a defective condition unreasonably dangerous for the intended user. The only evidence I find in the record is that the trailer was designed for many uses. The affidavit of the expert fails to consider that the trailer could be used for many purposes other than hauling *Page 799 
a tracked vehicle; consequently, I must dissent.
ALMON and STEAGALL, JJ., concur.
[3] See majority op. at 794 for the substance of this affidavit.
[4] In Johnson, at 92, the Court stated that the rule of that case was "supported by common sense."
[5] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit.
[6] Cf. Caterpillar Tractor Co. v. Ford, 406 So.2d 854, 859 (Ala. 1981). In Caterpillar, the majority sustained the jury's finding that the tractor was defective because of the failure of the manufacturer to provide a roll-over protective structure, notwithstanding that such a structure was offered as optional equipment. That case, however, did not involve a general purpose product comparable to the trailer involved in this case.