Plaintiff, Dee Roosevelt Watts, Jr., appeals the summary judgments entered in favor of defendants, TI, Inc., Truxmore, Inc., Ford Motor Company, and Moyer Ford Sales in an action alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), and liability for breach of warranty and negligence.
Watts was employed by the City of Foley as a garbage handler. On March 9, 1987, Watts fell from a step mounted on the right rear side of the garbage body of a truck and was run over by the right rear wheels of the truck, and was thereby caused injury. The truck was driven by Greg D. Sharratt. On August 27, 1987, Watts filed suit against Sharratt and their immediate supervisor, John Hardin, alleging willful misconduct; and against TI, Inc. (formerly Truxmore Industries, Inc.), the manufacturer of the garbage barrel (sometimes referred to in the record and briefs as a "garbage body" or "packer"); Truxmore, Inc., a subsequent purchaser of substantially all of the assets of Truxmore Industries, Inc.; Ford Motor Company, the manufacturer of the cab and chassis of the garbage truck; and Moyer Ford Sales, the local dealership through which the City of Foley purchased the truck, alleging breach of warranty and negligence and alleging liability under the AEMLD. After extensive discovery, the trial court granted motions for summary judgment in favor of Ford Motor Company on January 4, 1989, and on July 19, 1989, granted such motions in favor of TI, Inc., Truxmore, Inc., and Moyer Ford Sales, but denied the summary judgment motions made by Sharratt and Hardin. The summary judgments were made final pursuant to Ala.R.Civ.P., Rule 54(b).[1]
Watts argues on appeal that substantial evidence was presented to support his cause of action against these corporate defendants for their breach of duty under the AEMLD and, therefore, that summary judgment was improper.
This Court has stated the standard of review governing summary judgment:
 "Summary judgment is properly granted where the moving party has demonstrated that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P.; Osborn v. Johns, 468 So.2d 103
(Ala. 1985)."
Rowden v. Tomlinson, 538 So.2d 15, 18 (Ala. 1988).
On March 4, 1983, the City of Foley solicited bids for "two new 1983 Chassis and Cabs." Nowhere in the notice, bid, or purchase requisition was there made any mention of what use was to be made of the chassis and cabs. Moyer Ford Sales presented a bid based on specifications prepared by the streets and sanitation superintendent for the chassis and cabonly, and received a contract for the chassis and cab on April 4, 1983. The City of Foley solicited bids for garbage barrels on April 21, 1983. These specifications were prepared by the City of Foley and were for "hydraulic refuse truck body" only.
TI, Inc., subsequently bid on and received a contract for the garbage body on May 16, 1983.
This Court addressed a similar situation in the recent case of Johnson v. Niagara Machine Tool Works, 555 So.2d 88 (Ala. 1989). In that case, this Court held that the manufacturer of a drill press was entitled to a summary judgment where the *Page 1059 
"press had been substantially modified after it left the control" of the manufacturer. Johnson, supra, at 92. The Court went on to state that the manufacturer "should not be charged with a duty to guard or make safe all possible applications of its general purpose product. The possible application of a general purpose machine in a given manufacturing process not designed by the manufacturer is unforeseeable as a matter of law." Johnson, supra, at 92-93. Likewise, here, the Ford cab and chassis were general purpose products. There is absolutely no evidence that Moyer Ford Sales or Ford Motor Company knew for what purpose the truck would be used at the time it contracted to provide the cab and chassis. Therefore, summary judgment was proper as to Moyer Ford Sales and Ford Motor Company.
TI, Inc., a Virginia corporation, manufactured the garbage packer made the subject of this lawsuit and sold it to the City of Foley on October 19, 1983. In June 1985, TI, Inc., was sold to Truxmore, Inc., and on July 2, 1986, in compliance with Virginia law, articles of dissolution, a certificate of dissolution, and a certificate of termination of TI, Inc., were filed and registered with the Commonwealth of Virginia. This Court is bound to apply Virginia law as regards the survival of a remedy after the dissolution of a Virginia corporation. SeeFitts v. National Life Association of Hartford, Connecticut,130 Ala. 413, 30 So. 374 (1900).
The Code of Virginia, § 13.1-755, provides:
 "The termination of corporate existence shall not take away or impair any remedy available to or against the corporation, its directors, officers or shareholders, for any right or claim existing or any liability incurred, prior to such termination. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim. (Code 1950, § 13.1-101; 1956, c. 428; 1985, c. 522.)"
(Emphasis added.) The clear intent of the statute is to allow causes of action against dissolved corporations for actions that arose prior to the termination or dissolution of the corporation. The law is the same in Alabama. See Ala. Code 1975, § 10-2A-203.
Here, the cause of action did not arise until March 9, 1987, the date the injury occurred — nine months after TI, Inc., was terminated. Therefore, summary judgment was proper as to TI, Inc.
The question now is whether Truxmore, Inc., is liable in tort as a corporate successor to TI, Inc. Both Watts and Truxmore, Inc., argue Alabama law as determinative of this issue. Because neither argues that Virginia law applies and because the tests used to determine when successor liability exists are substantially the same under both Virginia and Alabama law, we will apply Alabama law to determine this issue. See Pepper v.Dixie Splint Coal Co., 165 Va. 179, 181 S.E. 406 (1935).
This Court in Colonial Bank of Alabama v. Coker,482 So.2d 286 (Ala. 1985), explained the grounds sufficient to support a finding of successor liability:
 " 'Liability of a successor corporation under corporation law is largely dependent on the form of the acquisition. When corporations merge, the successor remains liable for its predecessors' liabilities. This result is also obtained where, regardless of the denomination of the transaction by the parties, the acquisition constitutes a de facto merger. When, on the other hand, a corporation purchases the assets of another company the transferee is generally not liable unless (1) there is an express agreement to assume the obligations of the transferor, (2) the transaction amounts to a de facto merger or consolidation of the two companies, (3) the transaction is a fraudulent attempt to escape liability, or (4) the transferee corporation is a mere continuation of the transferor.' "
482 So.2d at 292, quoting Rivers v. Stihl, Inc., 434 So.2d 766,771 (Ala. 1983). Watts *Page 1060 
argues that Truxmore, Inc., should be held liable under (1), (2), and (4) of the Coker criteria. We have reviewed the record, including the asset purchase agreement, the articles of incorporation, the "organizational action of directors" and the affidavits; none of the criteria set out in Coker for successor liability has been met.
Watts contends that Paragraph 10 in the asset purchase agreement, entitled "Indemnification," constitutes an express agreement to assume the obligations of TI, Inc. After reviewing the indemnification portion of the asset purchase agreement, we conclude that that document, while indicating an agreement to assume some existing contractual obligations, does not amount to an express agreement to assume future claims in tort. Watts also argues that the purchase of TI, Inc., by Truxmore, inc., was a mere continuation of the transferor or a de facto merger of the two corporations. The record, however, reveals that Truxmore, Inc., purchased substantially all the assets of TI, Inc.; none of the officers, directors, or shareholders of TI, Inc., became officers, directors, or shareholders of Truxmore, Inc., and within one year after the transaction, all plant level supervisory employees of TI, Inc., had been replaced. There is absolutely no evidence to support Watts's contention that Truxmore, Inc., was a mere continuation of, or that there was a de facto merger with, TI, Inc. Therefore, as to Truxmore, Inc., summary judgment was proper.
We, therefore, hold that summary judgment was properly entered as to TI, Inc., Truxmore, Inc., Moyer Ford Sales, and Ford Motor Company. The summary judgments are due to be, and they are hereby, affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] This case was filed after June 11, 1987. The "substantial evidence rule," therefore, applies. See Ala. Code 1975, §12-21-12.