United States District Judge Sharon Lovelace Blackburn has certified to this Court the following question, pursuant to Rule 18, Ala. R.App.P.:
 "The plaintiff in this case, American Nonwovens, Inc. ('ANW'), an Alabama corporation with its place of business in Vernon, Alabama, has asserted claims against two different Italian corporations: Non Wovens Engineering, S.R.L. ('NWE') and Non Wovens Technology, S.p.A. ('NWT'). ANW's claims against NWE are largely based upon a November 30, 1988, contract between ANW and NWE pursuant to which NWE was to sell to and assemble for ANW a large piece of machinery at ANW's place of business in Vernon, Alabama. Briefly, ANW claims that the machinery has not performed as promised. ANW's contract claims against NWT are based on the theory that NWT is the corporate successor to NWE. Both NWE and NWT are Italian corporations. In May 1990, NWT purchased assets, patents and other rights from NWE. The transaction between NWT and NWE took place entirely in Italy. The issue to be certified is whether Italian or Alabama law governs the corporate successorship issue.
 "Stated another way, should the court apply Italian or Alabama law to determine whether NWT is the corporate successor to NWE? The Alabama Supreme Court expressly left this issue unresolved in Watts v. TI, Inc., 561 So.2d 1057, 1059 (Ala. 1990)."
In late November or early December 1988, American Nonwovens, Inc. ("ANW"), an Alabama corporation, entered into a contract with Non Wovens Engineering, S.R.L. ("NWE"), a corporation incorporated under the laws of the Republic of Italy. Under the contract, NWE agreed to sell to ANW certain machinery, specifically a 3.2 meter spunbonded nonwovens production line.[1] The contract stated that it was to be governed by Alabama law. Over the course of 1989, NWE shipped the production line machinery to ANW's plant in Alabama and began to assemble it. ANW claims that the machinery has failed to perform as promised.
In May 1990, Non Wovens Technology, S.p.A. ("NWT") was incorporated in the Republic of Italy. Later that month, NWT purchased NWE's technology, patent rights, and certain information concerning nonwovens spunbonded technology, including methods of manufacturing the machinery, technological processes, equipment design, and machinery *Page 567 
design. In June 1990, the 51% majority shareholder of NWE purchased the remaining 49% from NWE's only other shareholder, Claudio Governale. Governale also owns 40% of NWT.
On March 27, 1991, ANW sued NWE in the United States District Court for the Northern District of Alabama. On April 19, 1991, the complaint was amended to add NWT as a defendant. The complaint was amended a second time on February 21, 1992. As amended, it alleges breach of contract and breach of express and implied warranties. ANW's contract claims against NWT are based on its contention that NWT is liable as the corporate successor to NWE.
The question before us is whether Alabama law or Italian law should be applied to determine if NWT is the corporate successor to NWE for the purposes of liability on ANW's contract claims. We limit our answer to the contract claims, because the certified question relates only to those claims.[2]
ANW argues that the principle of lex loci contractus requires that the law of Italy be applied to the corporate succession issue. ANW is correct that the choice of law rule followed by Alabama provides that the law of the state wherein the contract was executed governs questions regarding the validity and interpretation of the contract. Harrison v. Insurance Co. of N.America, 294 Ala. 387, 391, 318 So.2d 253, 257 (1975); Macey v.Crum, 249 Ala. 249, 252, 30 So.2d 666, 669 (1947); Furst Thomas v. Sandlin, 208 Ala. 490, 492, 94 So. 740, 742 (1922). However, we do not agree with ANW that this rule requires the application of Italian law here. The contract that is the subject of this action is the contract between ANW and NWE. The case does not involve any dispute over the interpretation or validity of the agreements between NWT and NWE. Italian law would govern a lawsuit between NWT and NWE over the interpretation of the contract between them, because it was executed in Italy. Here, ANW is asserting claims against NWE under Alabama law, based on a contract executed in Alabama and expressly stating that Alabama law is to apply, and the federal court must decide whether NWT can be held liable on those claims as NWE's corporate successor. The issue is the effect of the transaction between NWE and NWT in the context of ANW's contract claims under Alabama law. In Macey v. Crum, 249 Ala. 249,252, 30 So.2d 666, 669 (1947), this Court stated, "The lex loci controls the validity and construction of the contract but the lex fori operates on the remedy to enforce it." Macey
involved a direct action against an insurance company to collect a judgment against its insured. The insurance contract was made outside Alabama, and neither the insurer nor the insured was a resident of Alabama. Macey, 249 Ala. at 251,30 So.2d at 667. Nevertheless, this Court applied Alabama law to determine whether the plaintiff had a remedy against the insurance company. See also, Fleming v. Pan American Fire Casualty Co., 495 F.2d 535, 539-41 (5th Cir. 1974) (discussing and applying Macey). Similarly, in this case we have a direct action against an alleged corporate successor to collect on a claim against another corporation.[3] Consequently, we conclude that Alabama law should be applied to determine whether NWT is the corporate successor or, in other words, whether there is a remedy available to ANW against NWT.
ANW contends that the general rule that internal corporate affairs are governed by the state where incorporation occurs requires that Italian law govern the question whether NWT is the corporate successor to NWE, because NWT and NWE were incorporated in the Republic of Italy. ANW cites § 10-2A-226, Ala. Code 1975, as reflecting the *Page 568 
principle of lex incorporationis. Section 10-2A-226 states, in part:
 "A foreign corporation shall not be denied a certificate of authority [to transact business in this state] by reason of the fact that the laws of the state or country under which such corporation is organized governing its organization and internal affairs differ from the laws of this state, and nothing in this chapter contained shall be construed to authorize this state to regulate the organization or the internal affairs of such corporation."
ANW would be correct if the issue in this case involved the organization or internal affairs of NWT or NWE. Corporate successorship involves the question whether one corporation is liable for the contracts or torts of another because of the nature of the transaction between the two corporations; it has nothing to do with organization or internal corporate affairs.
ANW also argues that Watts v. TI, Inc., 561 So.2d 1057 (Ala. 1990), requires that Italian law be applied in this case. InWatts this Court said, "This Court is bound to apply Virginia law as regards the survival of a remedy after the dissolution of a Virginia corporation." 561 So.2d at 1059. While Watts
involved an issue of corporate succession, that is not the issue the Court was addressing by this statement. As stated in the certified question from the United States District Court,Watts left the choice of law question relating to the corporate successorship issue open. It did so because the law of Virginia and the law of Alabama were "substantially the same."[4] Watts, 561 So.2d at 1059. In Watts, the Virginia corporation against which the plaintiff had a claim had been dissolved. We held, based on Fitts v. National Life Ass'n of Hartford, Connecticut,130 Ala. 413, 30 So. 374 (1901), that the law of the state of incorporation governed whether a remedy existed against a corporation that had been dissolved. In Fitts this Court stated:
 "Our statute . . . providing for the continued existence of dissolved corporations for five years for the purpose of prosecuting or defending suits, etc., has no application to foreign corporations. For existence here they depend solely on the State of their creation. They act here only by comity and can be sued here only as the statute may provide. Such legislation as has been enacted concerning them has not been with the intention of making them citizens here or of prolonging their existence here after it has terminated elsewhere.
 "In Mumma v. Potomac Co., [33 U.S. (8 Pet.) 281, 287, 8 L.Ed. 945 (1834),] it was pointedly said that 'every creditor must be presumed to understand the nature and incidents of such a body politic and to contract with reference to them. And it would be a doctrine new to the law that the existence of a private contract of the corporation should force upon it a perpetuity of existence contrary to public policy, and the nature and objects of its charter.' "
130 Ala. at 416, 30 So. at 375. The basic reasoning behind this rule is that the state that creates the corporation also governs when that corporation ceases to exist, and that, "[i]ndependent of statutory provisions, a corporation which has been finally dissolved by judicial decree is no longer a legal entity and, therefore, cannot be made a party defendant to a suit." Fitts, 130 Ala. at 415, 30 So. at 374. In ANW's case, there is no issue relating to the dissolution of a corporation. NWE was not dissolved; it still exists as a corporation. Therefore, the statement quoted from Watts concerning the survival of a remedy after the dissolution of a corporation, on which ANW relies, is not applicable to this case.
ANW also relies on the United States Constitution for two of its arguments *Page 569 
that Italian law should apply. The first is that the Full Faith and Credit Clause[5] requires the application of Italian law in this case. ANW relies on Order of United Commercial Travelersv. Wolfe, 331 U.S. 586, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947), in which the Supreme Court held that a South Dakota court had to enforce a charter provision of an incorporated Ohio fraternal benefit society preventing the beneficiary of a deceased member from suing for an accidental death benefit more than six months after the benefit had been refused by the supreme executive committee of the society, where that charter provision was valid under the law of the state of the society's incorporation, Ohio. ANW's argument based on Wolfe and on the Full Faith and Credit Clause is not well taken. On its face, the Full Faith and Credit Clause applies to sister states, not to foreign countries. Furthermore, unlike Wolfe, the case before us does not involve the interpretation or application of a foreign corporation's charter provisions.
ANW's second constitutional argument is that the Commerce Clause[6] requires the application of Italian law. ANW cites Edgarv. MITE Corp., 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269
(1982), in which the U.S. Supreme Court held that the Illinois Business Take-Over Act violated the Commerce Clause because it purported to regulate directly and to interdict interstate commerce, including commerce wholly outside the state. InEdgar, the Supreme Court stated:
 "The Commerce Clause also precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State. . . . The limits on a State's power to enact substantive legislation are similar to the limits on the jurisdiction of state courts. In either case, 'any attempt "directly" to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power.' "
Edgar, 457 U.S. at 642-43, 102 S.Ct. at 2641,73 L.Ed.2d at 283. ANW argues that a transaction between two corporations that occurs entirely in their home state or nation can be governed only by the laws of that state or nation. ANW's argument does not apply to the facts of this case. This case concerns liability on a contract executed in Alabama between an Alabama corporation and an Italian corporation. ANW is attempting to hold another Italian corporation liable on that contract. Thus, this case does not concern "commerce that takes place wholly outside of the State's borders." Therefore, applying Alabama law to determine if NWT is liable as a corporate successor on the contract executed in Alabama would not violate the Commerce Clause.
NWT points out that in at least three Alabama cases involving the issue of corporate successor liability on products-liability claims, this Court, without discussing the choice of law issue, has applied Alabama law to nonresident corporations. In Brown v. Economy Baler Co., 599 So.2d 1 (Ala. 1992), this Court applied Alabama law and held that an Ohio corporation was not liable as the corporate successor to the Michigan corporation that had manufactured a baler on which the plaintiff was allegedly injured in Alabama. In Turner v. WeanUnited, Inc., 531 So.2d 827 (Ala. 1988), this Court applied Alabama law and held that an Ohio corporation was not liable as the corporate successor to another Ohio corporation that had manufactured the general duty slitting machine that the plaintiff's husband was operating when he was fatally injured. In Matrix-Churchill v. Springsteen, 461 So.2d 782 (Ala. 1984), this Court applied Alabama law and held that a British company's subsidiary was not liable as the corporate successor to the Ohio corporation that had manufactured the automotive *Page 570 
repair lift that allegedly caused the plaintiff's injury in Alabama. While these cases are certainly not controlling, because in them the choice of law issue was not argued and because they are products-liability cases, they are examples of cases in which we have applied Alabama law to determine whether a nonresident corporation is liable as a corporate successor on claims arising under Alabama law.
Other courts have addressed the choice of law issue with regard to corporate successor liability in products-liability cases. The majority of these cases of which we are aware have held that the forum state's conflict rule for tort cases should also apply to the corporate successor liability issue. InTravis v. Harris Corp., 565 F.2d 443, 446 (7th Cir. 1977), the Court of Appeals for the Seventh Circuit, in addressing whether the purchasing corporations could be held liable as corporate successors for the plaintiff's injury, said:
 "The parties and the district court agreed that Ohio law should be applied because the 1964 contract so provided. Though the contract may be interpreted under Ohio law, the legal effect of that agreement, and questions of traditional tort law unrelated to the contract, are to be determined in accord with the laws of Indiana, the situs of the injury and domicile of Travis. Having the principal interest in the resolution of the present issues, and under its conflict of laws principles, Indiana would apply its own law."
In Reed v. Armstrong Cork Co., 577 F. Supp. 246, 248 (E.D.Ark. 1983), the federal district court said:
 "[P]laintiff contends that since PCC and Nicolet are Pennsylvania corporations, Arkansas, in applying choice of law, would find that the question of whether the corporations were successor corporations would be governed by Pennsylvania law since the sales agreements provided that Pennsylvania law would govern the rights of the corporations and matters of corporate organization are controlled by the state of incorporation. Defendants argue that since the issue is whether they should be held liable in strict liability . . . the law of the situs where the injury occurred and plaintiff resides would control.
 "The Court agrees with defendants that the question of liability is created under strict liability theory which is tort rather than contract or corporate law. Thus, Arkansas rather than Pennsylvania law would apply."
See also, Kramer v. Weedhopper of Utah, Inc., 204 Ill. App.3d 469,477, 149 Ill.Dec. 807, 812, 562 N.E.2d 271, 276 (1990) ("[s]uccessor corporate liability is determined under the choice of law provisions for products liability — traditional tort law"); Korzetz v. Amsted Industries, Inc., 472 F. Supp. 136,138-43 (E.D.Mich. 1979) (rejecting the contention that the law of the place of the contract for the purchase of the corporation governs the issue of corporate successor liability and holding that the law of the place of injury applies to that issue in products-liability cases). But see, Woody v.Combustion Engineering, Inc., 463 F. Supp. 817, 819 (E.D.Tenn. 1978) (holding that Pennsylvania law, the law designated to govern the contract for the purchase of the manufacturing corporation, should govern the question whether the purchasing corporation was liable as a successor corporation). We find these cases to be persuasive authority for holding that the law of the state whose law applies to the claim also applies to the issue of corporate successor liability.
Based on the foregoing, we hold that Alabama law applies to the question whether NWT is the corporate successor to NWE, for purposes of determining liability on the contract between NWE and ANW.
QUESTION ANSWERED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] "Nonwovens" is an oil-based material with many uses, including sterilized medical wrap, diaper liners, and furniture liners.
[2] The complaint asserts claims in tort for tortious interference with a contract and conspiracy against NWT only if NWT is determined not to be the corporate successor to NWE. The complaint also asserts a tort claim against NWT for conversion directly and not based on its status as a corporate successor. ANW's complaint also contains tort claims of negligence and fraud, but ANW states in its reply brief that "ANW is not alleging that NWT is liable for the tort claims under a successorship theory."
[3] We certainly do not hold that a corporate successor is the same as an insurer, only that for the choice of law analysis here the situations are comparable.
[4] The choice of law question relating to corporate successorship in Watts is not exactly the same as the question presented here. One difference is that the claim in Watts was a tort claim, whereas in this case we are concerned with contract claims. See Watts, 561 So.2d at 1059 ("the question now is whether Truxmore, Inc., is liable in tort as a corporate successor to TI, Inc." (Emphasis added.)). Another difference is that Watts involved corporations of a foreign state, whereas in this case we are concerned with corporations of a foreign nation. We express no opinion, however, on what difference, if any, these distinctions make.
[5] "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." U.S. Const. art. IV, § 1.
[6] "The congress shall have power to . . . regulate commerce with foreign nations, and among the several states, and with the Indian tribes. . . ." U.S. Const. art. I, § 8. *Page 571