On Application for Rehearing
The opinion of July 20, 2001, is withdrawn, and the following is substituted therefor.
On July 2, 1991, Jonie Whitaker, a tractor-trailer driver, was driving his "double-trailer rig" westbound on U.S. Highway 78, near Winfield. As he approached the old Mallard Creek Bridge,[1] Whitaker noticed another tractor-trailer, driven by Clifton E. Edwards, in the eastbound lane. As Whitaker approached the bridge, it started raining and became very windy. Edwards's truck appeared to Whitaker to be moving erratically, and Whitaker anticipated that it might jackknife. In anticipation of the probable jackknife, Whitaker decided to stop his truck to avoid a collision with Edwards's truck. He applied his brakes when he was approximately 150 to 200 feet from the eastern end of the bridge. According to Whitaker, braking suddenly on the rain-slick roadway caused his truck to collide with the bridge. Edwards's truck, meanwhile, had jackknifed and had come to rest at some point before reaching the western end of the bridge. The two trucks did not collide.
Whitaker sued Coca-Cola Company USA, a division of The Coca-Cola Company ("Coca-Cola"), and Edwards, alleging that they had negligently, willfully, and/or wantonly caused the accident and his resulting injuries. Coca-Cola and Edwards filed a joint motion for summary judgment. The trial court entered a summary judgment in their favor. Whitaker appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
Whitaker contends that he presented substantial evidence indicating that *Page 1254 
negligence on the part of Edwards caused the accident. Coca-Cola and Edwards argue that the undisputed evidence shows that it was negligence on the part of Whitaker himself that had caused his accident, that is, that Whitaker was contributorily negligent and is precluded from recovery. After reviewing the extensive record, including the affidavits and deposition testimony of two experts proffered by Coca-Cola and Edwards, as well as the testimony of both drivers and a witness to the accident, we conclude that the summary judgment, insofar as it relates to the negligence claim, was entered in error. Because Whitaker raises no argument concerning the summary judgment as it relates to the willfulness or wantonness claims, the summary judgment, insofar as it relates to those claims, is affirmed. See Bettis v. Thornton, 662 So.2d 256, 257
(Ala. 1995) (stating that when an appellant fails to argue the propriety of an aspect of the judgment, the issue is not before the appellate court).
Whitaker alleged in his complaint that negligence on the part of Edwards caused Edwards's truck to jackknife and that the jackknifing of Edwards's truck caused Whitaker, in an effort to avoid a collision with Edwards, to collide with the bridge. Edwards and Coca-Cola argued in their joint motion for summary judgment that Whitaker himself was negligent, in failing to maintain control over his truck while executing a controlled stop, and that his negligence was the true cause of his accident. Whitaker argued in response to the summary-judgment motion that Edwards's jackknifing caused a "sudden emergency" and that, under the sudden-emergency doctrine, Whitaker's response to that emergency was reasonably prudent under the circumstances.
We review a summary judgment de novo; we apply the same standard as the trial court applied. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c); see Lee v. Cityof Gadsden, 592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038. "Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12(d). See Ex parte General Motors Corp.,769 So.2d 903 (Ala. 1999); West, 547 So.2d at 871, and Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary-judgment standard.
Our supreme court has long stated that "summary judgments are rarely appropriate in negligence actions and that summary judgments in such cases will be reviewed cautiously." Briggins v. Shelby Med. Ctr., 585 So.2d 912,914 (Ala. 1991); see also Tolbert v. Gulsby, 333 So.2d 129, 136 (Ala. 1976) (stating that, because of questions of proximate cause and reasonableness, summary-judgment motions will not ordinarily be granted in negligence actions). Because the issue of contributory negligence involves considerations similar to those raised in a negligence action, our supreme court has stated that "a summary judgment based on contributory negligence is seldom proper." Osmer v. Belshe Indus., Inc.,585 So.2d 791, 796 (Ala. 1991) (citations omitted). "Our law of *Page 1255 
summary judgment requires a court to leave for the jury the question of contributory negligence when there is an issue of material fact on that question upon which reasonable persons could disagree." Osmer, 585 So.2d at 796 (citations omitted).
Recently, our supreme court explained that the burden on the party moving for a summary judgment depends on whether that party has the burden of proof at trial. Ex parte General Motors, 769 So.2d at 909 (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala. 1989) (Houston, J., concurring specially)). Because at trial Edwards and Coca-Cola would have the burden of establishing the defense of contributory negligence,see Central Alabama Elec. Coop. v. Tapley, 546 So.2d 371, 381 (Ala. 1989), they were required to "`support [their] motion with credible evidence, using any of the materials specified in Rule 56(c), [Ala.] R. Civ. P. ("pleadings, depositions, answers to interrogatories, and admissions on file, along with the affidavits."). The movant[s'] proof must be such that [they] would be entitled to a [judgment as a matter of law (JML)] if this evidence was not controverted at trial.'" Ex parteGeneral Motors, 769 So.2d at 909. They presented the affidavits of two experts, Thomas Talbott, an accident reconstructionist, and Jon Cook, a safety consultant; the depositions of both drivers, Edwards and Whitaker; the deposition of Mary Tucker, an eyewitness to the accident; the deposition of Clyde Reaves, an Alabama state trooper who responded to the accident to direct traffic; and portions of the deposition of Clyde Welch, a witness who lived near the accident scene and who testified concerning the distance from the bridge to the point at which Edwards's truck came to rest. These submissions, they contend, demonstrate that there is no genuine issue of material fact on the question whether negligence on the part of Whitaker was the actual cause of his accident.[2]
According to Whitaker, the following events transpired before the accident: He was driving west on Highway 78 at a speed of 45 miles per hour (mph). Although it had been raining earlier that day as Whitaker drove near Birmingham, it had been partly cloudy on his drive toward Winfield. As he approached the bridge, it began raining again. He crested a hill before seeing the bridge, which was located down an incline. As he surveyed the roadway ahead, Whitaker noticed the Coca-Cola truck driven by Edwards as it approached in the opposite lane. Edwards was heading east. Whitaker noticed that Edwards's truck was "bouncing up and down." From that observation, Whitaker concluded that Edwards might be losing control of his truck and that it might jackknife. He looked in his mirrors to observe the traffic around him and quickly returned his gaze to the road ahead, where Edwards had, as Whitaker had anticipated, jackknifed his truck. According to Whitaker, at the time he saw Edwards's truck "bouncing," he was 150 to 200 feet from the eastern end of the bridge; Edwards was, according to Whitaker's estimate, 250 to 300 feet from the western end of the bridge. Whitaker estimated that Edwards's truck, when it jackknifed, was 100 to 125 feet from the western end of the bridge. Whitaker described the road as *Page 1256 
rough and commented that his truck must have "shot into the bridge" because, he said, "it had just started raining and the road is always slicker [right] after it starts raining." He had started slowing down when he first suspected that Edwards was about to jackknife, so he explained that he was not going 45 mph when he hit the bridge.
When questioned about the accident report completed by the state trooper who responded to the accident, Whitaker stated that he disagreed with several aspects of the report. He specifically contradicted the stated speed of 55 mph and the statement that his accident had been caused by strong winds that blew his truck into the bridge. He stated, in response to further questioning, that the wind had not caused his accident.
Edwards testified as follows: He said he was driving east on Highway 78, headed to Eldridge. His trailer was empty, and his partner was sleeping in the overhead sleeping compartment. He, too, described the road as rough and bumpy, said that he was aware of construction in the area, and testified that he was likely traveling 35 to 40 mph. He said he had encountered some light rain a few miles before reaching the bridge, but that when he was approximately 600 to 700 feet before the bridge, the weather conditions changed suddenly — he described the rain as a sudden deluge and stated that it had become very windy. The wind was "whipping and shaking his trailer," so Edwards checked his mirror to see how the trailer was faring. He noticed the back wheels leaving the roadway, and he felt the "traction" on the trailer break; the trailer came around the side of the tractor, damaging the fuel tank and putting the trailer into a skid. He estimated that he was approximately 175 yards (525 feet) from the bridge when the trailer jackknifed and that the truck came to rest, across both lanes, about 75-100 yards away from the bridge (225-300 feet). Edwards testified that he had not seen Whitaker's accident. Because he was blocking both lanes of traffic, Edwards moved his truck and parked it along the shoulder of the westbound lane. He, too, disputed the accident report, which stated he was traveling 55 mph. He also said the state trooper did not complete the accident report at the scene.
Mary Tucker, who was working on the construction of the bridge that eventually replaced the old Mallard Creek Bridge, was an eyewitness to the accident. She testified that she saw both trucks as they approached the bridge. She described the weather as rainy and windy and said the road was very slick. She testified that Whitaker's truck was traveling at a reduced speed; she remembers thinking that he must be a safe driver. She recalled seeing Edwards's truck in the middle of the road; it was there, she assumed, because he might be avoiding a pothole. She testified that she thought Edwards was traveling too fast. She said that Edwards's truck jackknifed and took up both lanes as it slid toward the bridge. She believed that the trucks might collide on the bridge. She said that Edwards's truck stopped approximately 50 to 75 feet from the bridge. After Edwards stopped, Tucker ran to assist Whitaker, who had hit the bridge. She said Edwards moved his truck from the roadway before the state troopers arrived at the scene.
Thomas Talbott and Jon Cook, experts proffered by Edwards and Coca-Cola, opine in their respective affidavits that Whitaker could have stopped his truck well within the distance between his truck and Edwards's truck without colliding with the bridge. They both conclude that Whitaker was negligent and that his own negligence, in failing to maintain control of his truck, *Page 1257 
caused his accident. Whitaker submitted Talbott and Cook's respective depositions in opposition to the summary-judgment motion.
Talbott bases his conclusion on his experience as an accident reconstructionist, the speed at which each truck was traveling, and the distances between Whitaker's truck and Edwards's truck from the time Whitaker first noticed Edwards to the time both trucks came to rest. In his deposition, he also discusses friction ratios, the estimated "slickness" of the road, and how these elements affect braking distances. He states that he believes Whitaker could have stopped his truck without hitting the bridge, but he does say "unless the wind or something affect[ed] it."
Cook, who had in the past driven a tractor-trailer for a living, bases his conclusion, in large part, on his experience as a driver, as well as variables like speed and distance. According to his deposition testimony, he agreed that Whitaker would not have known where Edwards's truck might have stopped and that Whitaker's decision to stop his truck was appropriate. However, Cook found fault in Whitaker's loss of control over his own truck while executing the braking maneuver, which was, in his opinion, the cause of Whitaker's accident.
The testimony of Clyde Reaves, one of the two state troopers who responded to the accident, is of limited value. He remembered very little about the accident and testified, contrary to the testimony of Tucker and Edwards himself, that the truck was still jackknifed in the road when he arrived at the scene. He also testified that he was not the state trooper who investigated the accident, but, instead, that he was assigned to direct traffic at the scene. He also stated that he did not recall the other state trooper's measuring the distances involved with a tape measure or a "walking stick"; he believed that the other state trooper "walked off" the distance.
Clyde Welch, a nearby homeowner, testified that he saw the accident scene from his property and that he recalled approximately where Edwards's truck was located. His testimony was that he had accompanied another person to that site. He further stated that he had witnessed the measurements taken that day, which were approximately 225 to 335 feet, presumably from the bridge.
"In order to prove contributory negligence, [Edwards and Coca-Cola] must show that [Whitaker]: (1) had knowledge of the condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care, by placing himself in the way of danger." Brown v. Piggly-Wiggly Stores, 454 So.2d 1370, 1372 (Ala. 1984). They attempt to meet this burden by arguing that Whitaker's collision with the bridge resulted from a failure on his part to exercise reasonable care to maintain control over his truck. Whitaker, however, argues that he should not be held to the ordinary "reasonable-care" standard because, he says, Edwards's jackknifing truck presented him with a sudden emergency from which he attempted, and failed, to extricate himself. Edwards and Coca-Cola argue that, if there was a sudden emergency, it was of Whitaker's own making and, therefore, that the sudden-emergency doctrine does not apply.
 "The sudden emergency doctrine is available to explain why in certain situations a person is not held to the strict standard of care required of a reasonably prudent person acting under ordinary circumstances. `Under that doctrine, a person faced with a sudden emergency calling for quick action is not held to the same correctness of judgment and action that would apply if he had the time and opportunity to consider *Page 1258 
fully and choose the best means of escaping peril or preventing injury.' For the sudden emergency doctrine to be applicable, there must be a sudden emergency and the sudden emergency must not be the fault of the one seeking to invoke the doctrine."
Bettis v. Thornton, 662 So.2d 256, 257 (Ala. 1995) (quoting DairylandIns. Co. v. Jackson, 566 So.2d 723, 727 (Ala. 1990)) (other citations omitted).
Although many, if not all, sudden-emergency doctrine cases involve the propriety of a trial court's choice to charge the jury on the doctrine,Tillis Trucking Co. v. Moses, 748 So.2d 874, 885 (Ala. 1999); Bettis, 662 So.2d at 257; Moore v. Horton, 694 So.2d 21, 23 (Ala.Civ.App. 1997), we certainly find the underlying legal principles in those cases persuasive. Alabama law requires that a trial court give the charge if the jury has heard evidence from which it could conclude that there was a sudden emergency, Bettis, 662 So.2d at 258, and "[i]t is a question for the finder of fact as to whether the doctrine is properly applicable."Moore, 694 So.2d at 23. Logically, then, if there is substantial evidence of disputed material facts upon which a fact-finder could base a determination that a sudden emergency existed, a summary judgment on the issue would be inappropriate.
After reviewing the extensive record, we conclude that the facts and opinions contained therein would permit a fact-finder to conclude that Whitaker was faced with a sudden emergency not of his making and that he was not to be held to the same standard as one acting under ordinary circumstances. Although Edwards and Coca-Cola argue that Whitaker created the sudden emergency by failing to have his truck under control when he applied his brakes, the conflicting evidence concerning the accident does not compel a finding that Whitaker was not in control of his truck at the time he began to apply his brakes. Even though Whitaker obviously lost control of his truck at some point, the mere fact that he did is, in the words of our supreme court, "the very point of the doctrine." SeeMoses, 748 So.2d at 885 (explaining, in response to the defendant trucking company's argument that the sudden emergency was of the decedent's own making because she swerved in the wrong direction, that, "with time to react, one might swerve to the right side of the road, whereas, slamming on her brakes as the trailer loomed out of the darkness, Mrs. Moses may have caused he car to move to the left rather than the right"). In any event, whether the sudden-emergency doctrine is applicable in this case is for a jury, not a court, to determine.
OPINION OF JULY 20, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, P.J., and Thompson and Murdock, JJ., concur.
Pittman, J., dissents.
[1] The bridge has since been destroyed; a new bridge was constructed nearby.
[2] Although Edwards and Coca-Cola indicate that they dispute the contention that Edwards was negligent in the first instance, that argument was not fully developed in their summary-judgment motion or on appeal. In addition, at least one of their experts opines that Edwards was negligent in failing to maintain control of his truck. Therefore, we will assume that Edwards and Coca-Cola are conceding that the question of Edwards's negligence is for a jury to determine.